## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

MARION STEPHENS,

       Plaintiff,

v.                                    Case No.

NATIONAL RAILROAD PASSENGER
CORPORATION, a/k/a AMTRAK,          **JURY TRIAL DEMANDED**
BNSF RAILWAY COMPANY, and
MS CONTRACTING, LLC,

       Defendants.

---

## COMPLAINT

---

Plaintiff Marion Stephens, by and through his attorneys, ROMANUCCI & BLANDIN, LLC, HUPY & ABRAHAM, and CROSS LAW FIRM, LLC, as and for his Complaint at Law against the Defendants, NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a AMTRAK, BNSF RAILWAY COMPANY, and MS CONTRACTING, LLC, states as follows:

### INTRODUCTION

This action arises out of the catastrophic injuries that Marion Stephens sustained on June 27, 2022, when Amtrak Southwest Chief Train 4 derailed after colliding with a dump truck at an uncontrolled crossing at Porche Prairie Road or Avenue ("Porche Prairie Crossing") in Mendon, Missouri. At the time of the derailment, Amtrak intentionally knowingly and intentionally overcrowded passengers, placing increased ticket sales (and by extension profits) over the safety of passengers onboard the Amtrak Southwest Chief Train 4. As a result, approximately 275 passengers and 12 crew members were recklessly thrust in harm's way, resulting in four deaths (three passengers onboard the train and the truck driver employed by defendant MS Contracting, LLC), with upwards of 150 people reported injured.

1

The death and destruction caused by defendants' combined negligence was needless and completely preventable. The cause is clear—the ongoing carelessness of Defendants Amtrak and BNSF. Amtrak and BNSF were aware of this threat for years, with both receiving numerous warnings and notices about this passive crossing and requests to upgrade it by adding necessary protective devices, pleas that went ignored.

By placing profits over safety, by promoting their bottom line over human life, Defendants Amtrak and BNSF needlessly put the lives of countless passengers in grave peril, including Marion's. As a result of Amtrak and BNSF's corporate greed and deception, and reckless disregard for the well-being of Amtrak's passengers, Marion sustained significant, permanent injuries from which he will never fully recover. Defendants now must be held accountable for their actions and the untold harms they have caused.

## PARTIES

1.      Plaintiff Marion Stephens is an adult male residing in Rockford, Winnebago County, Illinois.

2.      At the time of the derailment, Marion was leaving California to move to Rockford, Winnebago County, Illinois, and make it his home.

3.      Defendant National Railroad Passenger Corporation a/k/a Amtrak ("Amtrak") maintains its headquarters at 60 Massachusetts Avenue, Washington, D.C., 20002.

4.      At all relevant times, Amtrak has been a passenger railroad service that provides medium and long-distance inter-city rail service in the contiguous United States and to nine cities in Canada. As a result, Amtrak carries out substantial, continuous, and systematic business activities in the state of Missouri.

5.      At all relevant times, Amtrak acts, and was acting, by and through its employees,

servants, agents, and/or staff, all of whom were acting within the course and scope of their employment with Amtrak.

6.      At all relevant times, Amtrak was the owner and operator responsible for the safe operation of the locomotive and passenger cars comprising the Southwest Chief Train 4 involved in this subject derailment.

7.      Marion's injuries and damages alleged in his lawsuit arise out of, and are related to, Amtrak's contacts and activities in the state of Missouri.

8.      Defendant BNSF Railway Company ("BNSF"), the principal operating subsidiary of parent company Burlington Northern Santa Fe, LLC, is headquartered at 2650 Lou Menk Drive, Fort Worth, TX. BNSF's parent company is a wholly-owned subsidiary of Berkshire Hathaway, Inc.

9.      At all relevant times, BNSF is and has been one of the largest freight railroads in North America. One of seven North American Class I railroads, BNSF has 35,000 employees, 32,500 miles (52,300 km) of track in 28 states, and nearly 8,000 locomotives. It has three transcontinental routes that provide rail connections between the western and eastern United States. As a result, BNSF has carried out, and continues to carry out, substantial, continuous, and systematic business activities within the state of Missouri.

10.     At all relevant times, BNSF acts, and was acting, by and through its employees, servants, agents, and/or staff, all of whom were acting within the course and scope of their employment with BNSF.

11.     At all relevant times, BNSF was the owner and operator responsible for the care and maintenance of the train tracks and passive grade crossing where the subject derailment occurred in Mendon, Missouri and on which the Southwest Chief Train 4 was travelling at the time

of the derailment.

12.     Marion's injuries and damages alleged in his lawsuit arise out of, and are related to, BNSF's contacts and activities in the state of Missouri.

13.     Defendant MS Contracting, LLC ("MS Contracting") is a limited liability company with its principal place of business located at 25851 Highway M, Brookfield, Missouri.

14.     At all relevant times, MS Contracting was the owner and operator of the dump truck that was struck by the Amtrak Southwest Chief Train 4 resulting in the subject derailment.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds the jurisdictional threshold, exclusive of costs, is between citizens of different states, and has jurisdiction over Defendants because each of the individual Defendants have minimum contacts with the state of Missouri such that the maintenance of the suit in this District does not offend traditional notions of fair play and substantial justice, and because the injuries and damages alleged arise out of, and are related to, Defendants' collective contacts and activities in the state of Missouri.

16.     This Court further has general jurisdiction over defendant MS Contracting because it is incorporated in Missouri and has its principal place of business in Missouri.

17.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1349 because the United States is the owner of more than one-half of Defendant Amtrak's capital stock.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the acts, omissions, and events giving rise to Plaintiff's claim occurred in the Eastern District of Missouri.

## FACTUAL BACKGROUND

### A.  Profit Over Safety

19.     The Southwest Chief is a passenger train operated by Amtrak on a 2,265-mile route through the Midwestern and Southwestern United States. It runs between Chicago and Los Angeles, passing through Illinois, Iowa, Missouri, Kansas, Colorado, New Mexico, Arizona, and California. Amtrak bills the route as one of its most scenic, with views of the Painted Desert and the Red Cliffs of Sedona, as well as the plains of Iowa, Kansas and Colorado.

20.     During fiscal year 2019, the Southwest Chief carried 338,180 passengers. Amtrak reported gross revenue in excess of $43 million in 2018.

21.     Profit, not safety, is Amtrak's primary consideration, as evidenced by the blatant and obvious overcrowding of the Southwest Chief Train 4 with passengers and luggage.

22.     Upon information and belief, every seat on the Southwest Chief Train 4 was filled. Moreover, Amtrak exceeded the permissible luggage storage space and placed excess luggage in the passenger car lounges.

23.     By way of further example, on June 27, 2022, as the Southwest Chief Train 4 approached its stop in Kansas City, Missouri, Amtrak announced to passengers onboard the train, who were planning and scheduled to catch a connecting train, that they would miss their connection. Rather than allowing those passengers to unboard and wait for another connecting train, Amtrak required passengers to stay on board, while allowing additional passengers to board the train in Kansas City.

24.     At the time, Amtrak knew it was overcrowding the train beyond its safe capacity.

25.     At the time, Amtrak knew or should have known that overcrowding the train with passengers and luggage would expose the passengers to a greatly increased risk of harm and injuries, including but not limited to death, in the event of an accident or derailment.

26.     At the time, Amtrak knowingly overcrowded the train fully appreciating that this subjected its passengers, including Plaintiff, to harm.

27.     Upon information and belief, the injuries suffered by passengers, including Plaintiff, were exacerbated as a direct and foreseeable result of Amtrak's careless decision to overcrowd the train beyond its safe capacity.

28.     As a result of Amtrak's intentional decision to overcrowd the train beyond its intended capacity, there were more people and more luggage on the train when it derailed, causing additional and magnified injuries.

**B.  This Derailment Was Foreseeable and Preventable**

29.     Amtrak and BNSF have known for years that the Porche Prairie Crossing was unacceptably dangerous, yet they knowingly and carelessly decided to not take appropriate precautionary measures to prevent this foreseeable derailment and crash from occurring.

30.     The Porche Prairie Crossing is/was a passive crossing that was not equipped with any of the critical safety devices necessary for the protection of train passengers and motorists attempting to cross the tracks.

31.     For decades, the NTSB has urged the elimination of passive crossings by either converting them to active crossings with the installation of critical safety equipment like crossing arms, lights, or bells, or consolidating crossings.

32.     Passive crossings like the Porche Prairie Crossing are dangerous and they subject innocent and helpless train passengers and motorists to extreme and unacceptable safety hazards every single day.

33.     Both Amtrak and BNSF knew or should have known that the Porche Prairie Crossing was dangerous and in dire need of safety upgrades.

34.     The Porche Prairie Crossing was known to be dangerous and plans were developed to upgrade the crossing to an active crossing through the installation of lights, gates, and roadway improvements.

35.     The Missouri State Freight & Rail Plan, 2022, explicitly identifies the BNSF Porche Prairie Crossing as one that would receive the critical safety upgrades:

| Proposed Program | Description | Corridor/ Location | Need Addressed[1] |
|---|---|---|---|
| **BNSF Railway** | | | |
| Crossing Safety Improvements, County Road 113/Porche Prairie Road | Installation of lights and gates and roadway improvements at public crossing 005284Y | Mendon | |

\*\*\*

| | | | |
|---|---|---|---|
| Chariton County—Roadway Approach Improvements | Improvements to the roadway approaches at 3 public crossings: Atchison Avenue, Snyder Avenue, and Porche Prairie Avenue | | |

\*\*\*

| Project Title | Need Addressed | Project Description | Estimated Capital Cost ($YOE in Millions) | Funding Levels ($YOE in Millions) 1) Nonpublic 2) Federal 3) Non-Federal | Funding Sources 1) Nonpublic 2) Federal 3) Non-Federal |
|---|---|---|---|---|---|
| Medill—Crossing Safety Improvements, County Road 134 | Safety and Crossings | Roadway safety improvements at public crossing 005019J | | $0.09 | Section 130 |
| | | | | $0.01 | GCSA |
| Mendon—Crossing Safety Improvements, County Road 113/ Porche Prairie Road | Safety and Crossings | Installation of lights and gates and roadway improvements at public crossing 005284. | $0.4 | $ — | — |
| | | | | $0.325 | Section 130 |
| | | | | $0.075 | GCSA |

\*\*\*

| Triplett—Roadway Approach Improvements | Safety and Crossings | Improvements to the roadway approaches at 3 public crossings: Atchison Avenue, Snyder Avenue, and Porche Prairie Avenue | $0.4 | $ — | — |
|---|---|---|---|---|---|
| | | | | $0.36 | Section 130 |
| | | | | $0.04 | GCSA |

*Figure 1*

36.     Further, a recent draft multimodal operations report identifies the BNSF Porche Prairie Crossing as one that was planned to undergo installation of lights and gates and roadway improvements, and that it would cost $400,000 funded by both the state and federal governments:



| District: | NW | Install lights and gates and roadway improvements at public BNSF railroad crossing 005284Y | | |
|---|---|---|---|---|
| County: | Chariton | | | |
| City: | Mendon | **Federal:** | **State:** | **Local:** |
| Street: | Co Rd 113 / Porche Prairie Rd | 325 | 75 | 0 |
| | | **Estimate Total:** | 400 | |

*Figure 2*

37.     The federally funded safety improvements to the Porche Prairie Crossing were planned but not implemented or operational prior to or at the time of this catastrophic derailment.

38.     At all relevant times, BNSF owned, operated, and was responsible for maintaining the Porche Prairie Crossing that was subject to these recommended repairs and improvements.

39.     These critical safety upgrades to the Porche Prairie Crossing were delayed, in part, because of BNSF's lack of cooperation to make the improvements.

40.     In the months and years prior to June 27, 2022, BNSF had been notified numerous times by concerned citizens and local government of the dangers presented by the Porche Prairie Crossing.

41.     BNSF knew or should have known that failing to timely make necessary and critical safety upgrades to the Porche Prairie Crossing would expose passengers traveling on its rails and

motorists to an extreme and unacceptable risk of severe injury and/or death.

42.    BNSF failed to make the necessary safety improvements at the Porche Prairie Crossing carelessly disregarding the numerous complaints and notices about the urgent need for these safety improvements.

43.    BNSF's knowing failure to commit necessary resources to upgrade the Porche Prairie Crossing was driven purely by a desire to save expenses. As a result, hundreds of lives were needlessly risked. Stated differently, BNSF placed profits before the safety of the traveling public.

**C. Defendants' History of Derailments**

44.    This tragedy occurred due to the systematic failures of Amtrak to have an adequate culture in place to ensure safety on its railways.

45.    The June 27, 2022, Amtrak Southwest Chief Train 4 derailment is the latest chapter in Amtrak's long history of tragic train accidents and its culture of disregard for the safety and lives of its passengers.

46.    Since 2015, there have been several similar occurrences, all caused in whole or part by Amtrak placing profits over the safety of the travelling public, including but not limited to the following notable crashes and derailments:

      a.  On May 12, 2015, Amtrak Train 188 derailed near Philadelphia, Pennsylvania, killing eight passengers and injuring over 200.

      b.  On March 14, 2016, the Amtrak Southwest Chief Train derailed near Cimarron, Kansas, injuring 28 passengers.

      c.  On April 3, 2016, Amtrak Train 89, known as the Palmetto, struck a backhoe and derailed just south of Philadelphia, Pennsylvania, killing two.

      d.  On December 18, 2017, the Amtrak Cascades Train 501 derailed near DuPont, Washington, killing three and injuring 65 passengers.

      e.  On February 4, 2018, Amtrak Regional Rail Train 91 train failed to properly navigate a railroad switch near Cayce, South Carolina and collided

with a freight train, killing two and injuring scores of passengers.

   f.   On September 25, 2021, Amtrak Empire Builder Train 7/27 derailed outside
        of Joplin, Montana killing three and injuring dozens.

47.    Tragically, Amtrak has failed to learn from these prior deadly accidents and has continuously failed to ensure that its trains are operated safely and continues to put passengers at risk of catastrophic injury and death each time they board an Amtrak train.

### D.  The June 27, 2022, Derailment

48.    On June 27, 2022, at approximately 12:43 pm, Southwest Chief Train 4 approaching a passive grade crossing at Porche Prairie Avenue in Mendon, Missouri while travelling at approximately 89 miles per hour.

49.    At the same time, an MS Contracting dump truck involved in transporting aggregate stone to a nearby Army Corps of Engineers project approached the Porche Prairie Crossing intending to cross over the tracks.

50.    The Porche Prairie Crossing is a passive grade crossing, meaning that it has no critical safety devices such as lights, crossing arms, or any other notification alerting motorists or pedestrians to oncoming high-speed trains.

51.    The Porche Prairie Crossing was equipped only with crossbucks and a stop sign.

52.    Several factors impact vision as incoming vehicles approach the Porche Prairie Crossing. First, there is a steep approach to the crossing. Second, overgrown vegetation surrounds the crossing and the tracks, severely restricting sight lines, and causing difficulty for drivers to accurately gauge distances of oncoming trains.



*Figure 3*

53.     Upon information and belief at approximately 12:43 pm on June 22, 2022, the
Southwest Chief sped towards the Porche Prairie Crossing at approximately 89 miles per hour.
Upon information and belief, the locomotive's engineer observed the MS Contracting truck
approaching and/or in the crossing at this time and sounded the trains' horn.

54.     On June 22, 2022, at approximately 12:43 pm, Amtrak had a duty and obligation
to avoid specific, individual hazards like the MS Contracting dump truck by, amongst other
things, reducing speed to avoid a collision.

55.     On June 22, 2022, at approximately 12:43 pm, Amtrak's operating engineer
and/or other members of the train crew knew or should have known that a collision was
imminent with the MS Contracting dump truck as it approached the Porche Prairie Crossing and
that the train was required to reduce speed in an effort to avoid a collision.

56.     Despite this, and upon information and belief, the Amtrak operating engineer failed
to reduce the Southwest Chief Train 4's speed before violently colliding with the MS Contracting
dump truck.

57.     Had the Amtrak operating engineer appropriately reduced the Southwest Chief Train 4's speed, the MS Contracting truck may or could have cleared the Porche Prairie Crossing preventing this collision and derailment from occurring.

58.     Upon information and belief, Southwest Chief Train 4 operating engineer failed to appropriately slow the train prior to colliding with the MS Contracting dump truck.

59.     Upon information and belief, had Amtrak's crew appropriately responded to the specific, individual hazard presented by the MS Contracting truck and immediately applied the emergency brakes and slowed the train as much as possible, it might have provided enough time for the MS Contracting truck to finish crossing the tracks and clear out of the way and this tragedy would have been avoided.

60.     Upon information and belief, the Amtrak operating engineer failed to appropriately respond and failed to appropriately slow the train.

61.     Furthermore, upon information and belief the injuries suffered by passengers, including Plaintiff, were dramatically magnified and exacerbated as a direct and predictable result of Amtrak's reckless and outrageous intentional decision to overcrowd the train beyond its safe capacity and the failure of Amtrak's operating engineer to appropriately slow the train as soon as the engineer observed the MS Contracting truck approaching and/or in the crossing.

62.     As a result of Amtrak's intentional decision to overcrowd the train beyond its safe capacity, and Amtrak's engineer's intentional decision not to apply the emergency brakes as soon as he observed the MS Contracting truck approaching and/or in the crossing, there were more people and more luggage on the train that were violently thrown around during the derailment, smashing into other passengers, including Plaintiff, and causing additional and magnified injuries.

63.     Even more outrageously, Amtrak has plans and procedures in place directing its

train crews to intentionally overcrowd trains and to pack passengers into standing room only situations which knowingly subjects all passengers to harm.

64.     This tragedy occurred due to the systematic failures of Amtrak to have an adequate culture in place to ensure the safety of its passengers on its railways.

65.     When the Amtrak Southwest Chief Train 4 collided with the MS Contracting dump truck, Marion Stephens was violently launched out of his seat.

66.     As a result of the Southwest Chief Train 4 collision with the MS Contracting dump truck, the train's two leading locomotives derailed and caused all eight trailing passenger cars, including the car in which Marion was located, to derail, flip onto their sides, then drag across the stone ballast and environment before coming to a grinding halt.

67.     Upon information and belief, the Southwest Chief was equipped with tightlock couplers which connected the eight passenger cars together. As a result of this coupling system, a chain reaction was caused once the first train car derailed and flipped causing all of the trailing passenger cars to flip onto their sides.



*Figure 4. Drone image of the Amtrak passenger train after it derailed near Mendon, Missouri.*
Source: The Kansas City Star



*Figure 5.* Source: KMBC

68.    When Plaintiff's train car was thrown from the tracks and flipped onto its side, Plaintiff fell from the opposite side of the train car causing him immense physical pain and injury to his back and shoulder.

69.    Once the smoke and dust from the collision settled, Plaintiff observed the horrific devastation surrounding him as terrified and injured passengers sought an exit from the flipped train car. Because the Southwest Chief Train 4 had no exit hatches in the roof, passengers like Plaintiff had to exit the train cars through the side windows that were smashed open when the train crashed into the ground.




*Figure 6.* Source: KAKE News.                    *Figure 7.* Source: Reuters

70.    Passengers, including Plaintiff, had to scale the interior structures of the flipped train cars to escape the wreckage from this horrific collision.

71.     Emergency first responders tended to Plaintiff and immediately transported him to Moberly Regional Medical Center for emergency medical treatment. Plaintiff subsequently learned that he suffered fractures to two (2) vertebrae on his spine, amongst other injuries.

**E.  Defendants Owed Plaintiff the Highest Duty of Care**

72.     Amtrak and BNSF owed the highest duty of care to the passengers aboard Southwest Chief Train 4, including Marion Stephens, to ensure that the train was operated properly and safely, that all tracks and equipment were in good working condition, that all crossings were safe and well protected, and critically, that passengers were not placed into dangerous conditions as a result of Amtrak's desire to sell more tickets, reap greater profits, and pack the trains as full as possible at the direct expense of safety.

73.     Amtrak and BNSF failed to fulfill the duties owed to Plaintiff, resulting in the catastrophic derailment of Amtrak Southwest Chief Train 4 on June 27, 2022, and the immense injuries and suffering inflicted on passengers, including Plaintiff Marion Stephens.

74.     As a direct and proximate result of Defendants, Amtrak's, BNSF's, and MS Contracting's negligence and willful and wanton conduct, Plaintiff Marion Stephens suffered serious, permanent injuries, of a personal and pecuniary nature, including pain, suffering, mental anguish, loss of normal life, and disability. These losses have been incurred in the past and will continue to be incurred in the future. Some or all of these losses are permanent.

75.     The injuries and damages suffered and claimed by Plaintiff Marion Stephens were caused solely by the acts of Defendants Amtrak, BNSF, and/or MS Contracting, jointly and/or individually and/or through their joint and individual agents, servants, and/or employees, and not through any act or omission on Plaintiff's part.

**COUNT I**
**(Negligence vs. National Railroad Passenger Corporation a/k/a Amtrak)**

76.     Plaintiff realleges and incorporates by reference paragraphs 1 through 75 as though fully set forth herein as Paragraph 76.

77.     At all relevant times, Defendant Amtrak was the owner, operator, lessor, controller and otherwise responsible for the care, maintenance, and operation of Southwest Chief Train 4 involved in this accident.

78.     As the owner and operator of Southwest Chief Train 4, Defendant Amtrak owed a duty to passengers like Plaintiff to ensure that the train was operated safely, carefully, and competently, and in such a way so as to not endanger its passengers.

79.     As the owner and operator of Southwest Chief Train 4, Defendant Amtrak owed a duty to passengers to hire, train and/or retain competent personnel to operate its locomotives, including the locomotive involved in this accident.

80.     As the owner and operator of Southwest Chief Train 4, Defendant Amtrak owed a duty to passengers to ensure that Southwest Chief Train 4 was properly inspected and maintained in good and safe condition and was capable of safely completing its journey without endangering the passengers aboard.

81.     As the owner and operator of Southwest Chief Train 4, Defendant Amtrak owed a duty to passengers to ensure that Southwest Chief Train 4 was adequately crashworthy and capable of protecting them in the event of a derailment or crash.

82.     The operator of Southwest Chief Train 4, Defendant Amtrak owed a duty to passengers to observe specific, individual hazards on the tracks and take immediate and appropriate action to prevent collisions.

83.     At all relevant times, Defendant Amtrak owed a duty to passengers to ensure that the train was not oversold or overcrowded beyond its safe capacity.

84. At all relevant times, Defendant Amtrak had a duty to ensure that all rail lines on which its trains traveled were in good and safe condition and would not pose a danger or hazard to the passengers.

85. At all relevant times, Defendant Amtrak owed its passengers, including Plaintiff, the highest duty of care under the law to ensure their safety during their travels.

86. At all relevant times, Defendant Amtrak and its operating engineer had a duty and responsibility to observe hazards approaching and/or in the crossing and appropriately and timely apply the train's brakes.

87. On and during this trip on the Southwest Chief Train 4 from Los Angeles, California, to Chicago, Illinois, Plaintiff and other passengers on Southwest Chief Train 4 trusted Amtrak with their lives as they rode as passengers on the train with no ability to control the operation themselves or to prevent this catastrophic derailment.

88. On June 27, 2022, Defendant Amtrak breached these aforementioned duties and as a result, caused this derailment and the injuries and damages alleged herein.

89. Defendant Amtrak, by and through its employees and/or agents, breached the abovementioned duties owed to Plaintiff, and all other passengers on the Southwest Chief Train 4, and failed to exercise ordinary care in one or more of the following ways:

    a. Enacted and enforced policies and procedures which required train crews to intentionally overcrowd the train beyond its safe capacity;

    b. Failed to enact and enforce policies and procedures to prevent overcrowding of its trains, including Southwest Chief Train 4, beyond the safe capacity;

    c. Operated the Southwest Chief Train 4 too fast for the conditions;

    d. Failed to slow down as the Southwest Chief Train 4 approached the specific, individual hazard presented by the MS Contracting truck;

    e. Failed to appreciate the hazard posed by the MS Contracting truck;

f.   Improperly and/or unsafely traversed the area in the vicinity of the Porche Prairie Crossing;

g.   Failed to appreciate the dangerous condition posed by the Porche Prairie Crossing;

h.   Failed to timely implement upgrades and safety improvements to the Porche Prairie Crossing despite receiving numerous notices and warnings of the danger that the Porche Prairie Crossing posed;

i.   Failed to properly inspect, maintain, and/or repair the tracks on which the Southwest Chief Train 4 was traveling;

j.   Failed to properly inspect, maintain, upgrade, and/or repair the crossings through which Southwest Chief Train 4 traveled, including the Porche Prairie Crossing;

k.   Failed to adequately construct, inspect and/or maintain the subject crossing, including the track, margins of the track, and the roadways intersecting and/or adjacent to the track, as required by R.S.Mo. §389.610;

l.   Failed to observe, appreciate, and/or correct the hazardous conditions which caused this derailment;

m.  Failed to ensure that the tracks on which the Southwest Chief Train 4 was traveling were in good and safe condition prior to the derailment;

n.   Failed to ensure that its passenger train cars were crashworthy;

o.   Failed to design, install, implement, and/or equip the subject train with devices and/or mechanisms that would prevent anything struck by the train, including the MS Contracting truck, from getting pulled underneath the train and causing derailment;

p.   Utilized a train coupling system that resulted in a chain reaction that caused all passenger train cars to derail and flip onto their sides;

q.   Failed to timely perform inspections, maintenance, and/or repairs to the railroad tracks at the location of the accident;

r.   Failed to safely navigate the tracks leading up to and at the location of the derailment;

s.   Failed to observe and appropriately respond to hazards on the track;

t.   Failed to stop the train before operating it into the MS Contracting truck;

u.  Failed to significantly slow the speed of the train before colliding with the MS Contracting truck;

v.  Failed to adequately communicate and coordinate with Defendant BNSF regarding the condition of the tracks on which the Southwest Chief Train was traveling and all crossings through which the train traveled;

w.  Failed to adequately communicate and coordinate with Defendant BNSF regarding inspection, maintenance, and upkeep of the tracks on which the Southwest Chief Train was traveling;

x.  Allowed improperly trained, incompetent and/or unqualified personnel to operate the Southwest Chief Train;

y.  Failed to properly inspect the Southwest Chief Train;

z.  Failed to observe, appreciate, appropriately respond to and/or correct the hazardous condition(s) of that caused and/or contributed to this derailment;

aa. Failed to ensure that the Southwest Chief Train was equipped with all appropriate, necessary, and adequate Positive Train Control systems;

bb. Failed to ensure that all crossings through which the Southwest Chief Train was traveling through were equipped with all appropriate, necessary, and adequate Positive Train Control systems;

cc. Violated governmental statutes, regulations, and requirements with respect to the train and train system in question;

dd. Failed to comply with the rules of the Northeast Operating Rules Advisory Committee;

ee. Failed to comply with the Rail Safety Improvement Act; and

ff.  Failed to comply with the Federal Locomotive Inspection Act.

90.    As a direct and proximate result of one or more of the aforementioned acts or omissions by Defendant Amtrak, Plaintiff was a passenger on the Southwest Chief Train that collided with the MS Contracting truck causing the train on which he was a passenger to derail.

91.    As a direct and proximate result of one or more of the aforementioned negligent acts or omissions by Defendant Amtrak, Plaintiff suffered serious injuries of a personal and

pecuniary nature, including pain, suffering, mental anguish, loss of a normal life, and disability. These losses have been incurred in the past and will continue to be incurred in the future. Some or all of these losses are permanent.

WHEREFORE, Plaintiff requests that this Court grant judgment in his favor and against Defendant National Railroad Passenger Corporation a/k/a Amtrak, and award Plaintiff the following relief:

1) All damages available under the law in an amount to be determined at trial, including compensatory damages;

2) Interest in an amount to be determined by the Court;

3) Court costs in an amount to be determined by the Court; and

4) Such other relief as this Court deems appropriate and just.

### COUNT II
#### (Negligence vs. BNSF Railway Company)

92.     Plaintiff realleges and incorporates by reference paragraphs 1 through 75 as though fully set forth herein as Paragraph 92.

93.     Defendant BNSF owns the train tracks of the Southwest Chief line, including those in Missouri and at the location of this derailment.

94.     Defendant BNSF owns and maintains the Porche Prairie Crossing and is responsible to ensure that it is safe and equipped with all necessary safety devices.

95.     Defendant BNSF is responsible to implement needed upgrades to its crossings, including the Porche Prairie Crossing, in a timely manner.

96.     As the owner of the train tracks and crossings, Defendant BNSF owed Plaintiff a duty to inspect, maintain, and repair the train tracks and crossings and all associated components

and equipment, including warning devices and signal systems, were in good and safe condition at all times.

97.     As the owner of the train tracks and crossings, Defendant BNSF owed Plaintiff a duty to ensure that its train tracks and crossings, including the Porche Prairie Crossing, were safe for use by passenger rail cars, including Southwest Chief Train 4.

98.     As the owner of the train tracks and crossings, Defendant BNSF owed Plaintiff a duty to ensure that trains, including Southwest Chief Train 4, would not be permitted to operate on tracks or through crossings that were damaged, dilapidated, in need of repair and/or safety upgrades, and/or were otherwise dangerous and hazardous.

99.     As the owner of the train tracks and crossings, Defendant BNSF owed Plaintiff a duty to notify and warn all companies operating passenger trains on its train tracks, including Amtrak and its Southwest Chief Train, and all of its passengers, of any tracks that were damaged, dilapidated, in need of repair, and/or were otherwise dangerous and hazardous.

100.    As the owner of the train tracks and crossings, Defendant BNSF owed Plaintiff a duty to ensure that its tracks and crossings, including the Porche Prairie Crossing, were equipped with all necessary equipment and technology, such as Positive Train Control, to ensure that the passengers aboard trains traveling the tracks would be safe and protected from derailments and accidents.

101.    As the owner of the train tracks and crossings, Defendant BNSF owed Plaintiff a duty to repair, maintain, correct, inspect, upgrade, and otherwise be responsible for Porche Prairie Crossing.

102.    As the owner of the train tracks and crossings, Defendant BNSF owed Plaintiff a duty to monitor the rail conditions on the tracks that it owned and operated as well as the safety of all crossings it owned, including the Porche Prairie Crossing.

103.    On June 27, 2022, Defendant BNSF breached these aforementioned duties and as a result, caused this derailment and the injuries and damages alleged herein.

104.    BNSF, by and through its employees and/or agents, breached the abovementioned duties owed to Plaintiff, and all other passengers on the Southwest Chief Train 4, and failed to exercise ordinary care in one or more of the following ways:

a.   Failed to provide a reasonably safe railroad track;

b.   Failed to provide a reasonably safe crossing, specifically the Porche Prairie Crossing;

c.   Failed to timely implement upgrades and safety improvements to the Porche Prairie Crossing;

d.   Failed to timely implement upgrades and safety improvements to the Porche Prairie Crossing despite receiving numerous notices and warnings of the danger that the Porche Prairie Crossing posed;

e.   Failed to timely implement upgrades and safety improvements to the Porche Prairie Crossing despite receiving numerous notices and warnings of the danger that the Porche Prairie Crossing posed;

f.   Allowed its railroad tracks, crossings, and associated equipment and components, including track switches and signal systems, to exist in a dangerous and dilapidated condition;

g.   Failed to properly and adequately inspect, maintain and/or repair the railroad tracks, crossings, and/or track systems;

h.   Failed to timely perform necessary safety upgrades and ensure that no trains traveled on the tracks until such time that the safety upgrades could be made;

i.   Failed to have properly trained and competent personnel inspect the condition of the railroad tracks, crossings, and/or track system prior to this accident;

j. Failed to ensure that the tracks and crossing on which the Southwest Chief Train were traveling were in good and safe condition prior to the derailment;

k. Failed to timely perform inspections, maintenance, repairs, and/or safety upgrades to the railroad tracks and the Porche Prairie Crossing at the location of the accident;

l. Failed to adequately communicate with Defendant Amtrak regarding inspection, maintenance, and upkeep of the tracks and/or crossings on which the Southwest Chief Train was traveling;

m. Failed to ensure that the railroad tracks and crossings in the area of the accident were equipped with all appropriate, necessary, and adequate Positive Train Control systems and technology;

n. Failed to warn the travelling public, including but not limited to the MS Contracting dump truck driver, of the impending train;

o. Failed to comply with the rules of the Northeast Operating Rules Advisory Committee;

p. Failed to adequately inspect the track in the area of this tragedy;

q. Failed to comply with the Rail Safety Improvement Act (RSIA); and

r. Failed to comply with the Federal Locomotive Inspection Act.

105. As a direct and proximate result of one or more of the aforementioned acts or omissions by Defendant BNSF, Plaintiff was a passenger on the Southwest Chief Train that collided with the MS Contracting truck causing the train on which he was a passenger to derail.

106. As a direct and proximate result of one or more of the aforementioned negligent acts or omissions by Defendant BNSF, Plaintiff suffered serious injuries of a personal and pecuniary nature, including pain, suffering, mental anguish, loss of a normal life, and disability. These losses have been incurred in the past and will continue to be incurred in the future. Some or all of these losses are permanent.

WHEREFORE, Plaintiff requests that this Court grant judgment in his favor and against Defendant BNSF Railway Company, and award Plaintiff the following relief:

1)  All damages available under the law in an amount to be determined at trial, including compensatory damages;

2)  Interest in an amount to be determined by the Court;

3)  Court costs in an amount to be determined by the Court; and

4)  Such other relief as this Court deems appropriate and just.

### COUNT III
**(Negligence vs. MS Contracting, LLC)**

107.    Plaintiff realleges and incorporates by reference paragraphs 1 through 75 as though fully set forth herein as Paragraph 107.

108.    Defendant MS Contracting was the owner and operator of the dump truck that was struck by Amtrak Southwest Chief Train 4 at the time of the derailment, bearing VIN # 1NKWXBEX97J177480.

109.    Upon information and belief, the subject MS Contracting dump truck was involved in transporting aggregate stone to a nearby Army Corps of Engineers project.

110.    While operating the dump truck, Defendant MS Contracting owed a duty to Plaintiff to operate the truck safely and in such a way that would not subject others to hazards.

111.    In operating the dump truck over and/or through the Porche Prairie Crossing, Defendant MS Contracting owed a duty to Plaintiff to ensure that it would not proceed through the crossing unless it was safe and there were no impending trains.

112.    On June 27, 2022, Defendant MS Contracting breached these aforementioned duties and as a result, caused this derailment and the injuries and damages alleged herein.

113.    Defendant MS Contracting, by and through its employee and/or agent, breached the abovementioned duties owed to Plaintiff, and all other passengers on the Southwest Chief Train 4, and failed to exercise ordinary care in one or more of the following ways:

    a.   Failed to safely operate the subject dump truck;

    b.   Failed to keep a proper lookout for hazards and/or hazardous conditions;

    c.   Proceeded through the subject Porche Prairie Crossing despite the danger posed by the oncoming train;

    d.   Failed to take evasive action;

    e.   Failed to maintain proper control of the dump truck;

    f.   Failed to observe, hear, and heed the oncoming Amtrak train's warning signals, including the train's horn;

    g.   Failed to properly train and supervise its employees; and

    h.   Otherwise failed to follow all relevant and applicable rules of the road.

114.    As a direct and proximate result of one or more of the aforementioned acts or omissions by Defendant MS Contracting, Plaintiff was a passenger on the Southwest Chief Train that collided with the MS Contracting truck causing the train on which he was a passenger to derail.

115.    As a direct and proximate result of one or more of the aforementioned negligent acts or omissions by Defendant MS Contracting, Plaintiff suffered serious injuries of a personal and pecuniary nature, including pain, suffering, mental anguish, loss of a normal life, and disability. These losses have been incurred in the past and will continue to be incurred in the future. Some or all of these losses are permanent.

WHEREFORE, Plaintiff requests that this Court grant judgment in his favor and against Defendant MS Contracting, LLC, and award Plaintiff the following relief:

1)   All damages available under the law in an amount to be determined at trial, including compensatory damages;

2)   Interest in an amount to be determined by the Court;

3)   Court costs in an amount to be determined by the Court; and

4)   Such other relief as this Court deems appropriate and just.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues herein so triable.

Dated:  July 8, 2022

Respectfully Submitted,

By:/s/ *Gerald Lee Cross, Jr.*_____

Attorney for Plaintiff

Antonio M. Romanucci*
David A. Neiman*
Martin D. Gould*
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark St., Suite 900
Chicago, IL  60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
dneiman@rblaw.net
mgould@rblaw.net

Vito J.  Manicioto*
**HUPY & ABRAHAM**
6475 Washington Street, Suite 105
Gurnee, IL 60031
Tel: (847) 625-5500
Fax: (847) 625-6318
vmanicioto@hupy.com

Gerald Lee Cross, Jr. (Mo. 60101)
**CROSS LAW FIRM, LLC**
8001 Conser St., Ste. 280
Overland Park, KS 66204
KS: 913-236-LAWS (5297)
MO: 816-454-LAWS (5297)
Fax: 913-904-1650
lcross@gmolaw.com

*Applications for admission *pro hac vice* forthcoming.

***Counsel for Plaintiff***